**KOBRE & KIM LLP**
D. Farrington Yates
Victor S. Leung
800 Third Avenue
New York, New York 10022
Tel: (212) 488-1200
Farrington.Yates@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioner*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 15 |
| GREENSILL BANK AG, | Case No. 21-_____ (___) |
| Debtor in a Foreign Proceeding. | Recognition Request Pending |

**VERIFIED PETITION FOR RECOGNITION OF FOREIGN**
**PROCEEDING UNDER CHAPTER 15 AND**
**MOTION FOR ORDER GRANTING RELATED RELIEF**

Dr. Michael C. Frege, in his capacity as the appointed Insolvency Administrator and putative foreign representative (in such capacity, the "Petitioner") for Greensill Bank AG ("Greensill Bank" or the "Debtor") in respect of the insolvency proceedings commenced pursuant to Sections 2, 3, 11 and 16 *et seq.* of the German Insolvency Act (*lnsolvenzordnung*), pending before the Bremen Local Court (*Amtsgericht Bremen*) (the "German Court"), Case No. 508 IN 6/21 (the "German Proceeding"), by and through his U.S. counsel, Kobre & Kim LLP, respectfully submits this verified petition and related motion (together, the "Verified Petition") seeking, among other things, the entry of the proposed order attached hereto as **Exhibit A** (the "Proposed Order") (i) recognizing the German Proceeding as a "foreign main proceeding" under sections 1502(4),

-1-

1515, and 1517 of title 11 of the United States Code (the "Bankruptcy Code");[1] (ii) recognizing the Petitioner as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code; and (iii) granting such other and further relief as the Court deems just and proper.

In support of this Verified Petition, the Petitioner relies on (i) the *Joint Verification of Dr. Michael C. Frege, As Duly Appointed Insolvency Administrator of Greensill Bank AG, and Charlotte Louise Schildt, As German Counsel to the Insolvency Administrator, in Support of Verified Petition for Recognition of Foreign Proceeding Under Chapter 15 and Motion for Order Granting Related Relief* (the "Joint Verification") and (ii) *the Declaration of Charlotte Louise Schildt in Support of Verified Petition for Recognition of Foreign Proceeding Under Chapter 15 and Motion for Order Granting Related Relief* (the "Schildt Declaration") filed concurrently herewith and incorporated as if fully set forth herein.  In further support of this Verified Petition, the Petitioner respectfully represents to the Court as follows[2]:

## PRELIMINARY STATEMENT

Greensill Bank is a foreign commercial bank with its center of main interests ("COMI") and nerve center located in Germany.  As detailed below, the German Proceeding constitutes a "foreign proceeding" because it is a collective judicial proceeding in a foreign country as contemplated by 11 U.S.C.A. § 101(23).  Because the German Proceeding is a foreign proceeding pending in the country where Greensill Bank has the center of its main interests, recognition of those proceedings as a "foreign main proceeding" is proper pursuant to chapter 15.  For the reasons

---

[1] All references herein to sections of the U.S. Code refer to the Bankruptcy Code unless otherwise specified.
[2] Capitalized terms used but not defined herein shall have the meanings ascribed in the Schildt Declaration.

-2-

set forth below, the Petitioner respectfully requests that the Court grant the relief sought in this Verified Petition.[3]

## **JURISDICTION, VENUE, AND ELIGIBILITY**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C.A. § 157 and 28 U.S.C. § 1334.  This is a core proceeding under section 157(b)(2) of title 28 of the United States Code.  *See* 28 U.S.C. § 157(b)(2)(P) ("Core proceedings include, but are not limited to . . . recognition of foreign proceedings and other matters under chapter 15 of title 11").

2.      Venue is proper in this District under 28 U.S.C. § 1410(1), which provides that "[a] case under chapter 15 of title 11 may be commenced in the district court of the United States for the district in which the debtor has its principal place of business or principal assets in the United States."  The Debtor does not have a place of business in the United States; however, the Debtor's principal cash assets in the United States are located within New York County, and thus within this District, in the form of a retainer deposited into an escrow account held by attorneys for the Petitioner, Kobre & Kim LLP. (Schildt Decl. ¶ 37).  In the alternative, venue is proper in this District under 28 U.S.C. § 1410(3) because proceeding in this District "will be consistent with the interests of justice and the convenience of the parties, having regard to the relief sought by the foreign representative."

3.      The presence of the above assets within the United States makes the Debtors eligible for relief under chapter 15 pursuant to section 109(a) of the Bankruptcy Code.  *See* 11 U.S.C. § 109(a) ("only a person that resides or has a domicile, a place of business, or property in

---

[3] While the Petitioner has not sought interim relief, the Petitioner reserves the right to do so as needed.

the US, or a municipality, may be a debtor under this title"); *In re Sovereign Assets Ltd and Guy Gissin*, No. 14-13009 (SCC) (Bankr. S.D.N.Y. Dec. 4, 2014) (Hr'g Tr. 9:19-10:16) [ECF No. 26-1] (Chapman, J.) (finding ownership of shares in U.S. subsidiaries organized under Delaware law satisfied the requirements of section 109(a)); *In re Octaviar Administration Pty Ltd.*, 511 B.R. 361 (Bankr. S.D.N.Y. 2014) (retainer deposited with U.S. counsel in New York was sufficient to satisfy section 109(a)).

## **BACKGROUND**

### A.    **Greensill Bank AG**

4.      Greensill Bank is a wholly-owned subsidiary of the Australian company Greensill Capital Pty Limited ("Greensill Capital"). (*See* Schildt. Decl. ¶ 7.)

5.      Greensill Capital also has the following wholly-owned subsidiaries: (a) Omin Technologies Limited (a Cayman Islands company); (b) Greensill Capital Management Company (UK) Limited (a UK company); (c) Laufer Limited (a UK company); (d) Greensill Capital (UK) Limited (a UK company, "Greensill Capital UK"); (e) Greensill Capital Management Company Pty Limited (an Australian company); (f) Greensill Capital Securities (Australia) Pty Ltd (an Australian company); and (g) EARND Pty Ltd (an Australian company). (*Id.* ¶ 8.)

6.      In addition, voluntary administrators were appointed to Greensill Capital in Australia on March 9, 2021; administrators were appointed to Greensill Capital UK on March 8, 2021; and Greensill Capital Inc., a U.S. entity and wholly-owned subsidiary of Greensill Capital Management Company (UK) Limited, filed a petition for relief under chapter 11 of title 11 of the United States Code in this District on March 25, 2021, *see In re Greensill Capital Inc.*, No. 1:21-

bk-10561 (Bankr. S.D.N.Y. March 25, 2021).  Upon information and belief, there is no known direct relationship between Greensill Bank AG and Greensill Capital Inc. (*Id.* ¶ 9.)

7.     Greensill Bank is a company incorporated in Germany in 1927.  Its registered office is located at Martinistrasse 48, Bremen, 28195 Germany, and its business headquarters is in Bremen, Germany. (*Id* 7.)

8.     Greensill Bank is a commercial bank organized under the German Banking Act (*Kreditwesengesetz*) with a license issued by the Federal Financial Supervisory Authority (*Bundesanstalt für Finanzdienstleistungsaufsicht*) ("BaFin").  (*Id.*)

9.     Greensill Bank does not have any subsidiaries within or outside of Germany and does not have any branches outside of Germany.  (*Id.* ¶ 12.)  Greensill Bank employed 137 people in Germany and owns the land at the address of its registered office in Bremen, Germany.  (*Id.*)  It has no employees or offices situated outside of Germany and does not have any other real property. (*Id.*)  Greensill Bank collected deposits primarily from German depositors.  (*Id.*)

10.     The corporate purpose of Greensill Bank is to provide banking services and products to individual and business consumers and municipal banks in Germany, including, but not limited to retail banking; corporate banking; time deposit accounts; installment loans; business loans; and trade finance.  (*Id.* ¶ 10.)  The main business involved investing in working capital finance programs (known as "factoring") administered by Greensill Capital UK.  (*Id.*)  Greensill Capital UK's factoring programs employed several structures, including the acquisition of accounts receivable, independent payment undertakings ("IPUs"), notes backed by receivables, and participations in trust structures that are declared with respect to receivables and/or IPUs.  (*Id.*)

11.     Greensill Capital UK and Greensill Bank were party to "Service Level Agreements," pursuant to which Greensill Capital UK, among other things, organized the process

for purchase of receivables, managed the receivables and assets acquired as part of the factoring programs, was obliged to administer the payment obligations underlying the receivables, acquire factoring assets, pay Greensill Bank its entitlements to the receivables and proceeds of the notes, provided support in relation to credit insurance obtained for the benefit of Greensill Bank, and provided Greensill Bank with certain information regarding customers and cash flow. (*Id.* ¶ 13.)

12.    Greensill Bank provided "origination support services" under an "Origination Framework Agreement" to Greensill Capital UK for its factoring programs in the following countries: Austria, France, Hungary, Italy, Portugal, Romania, Australia, and New Zealand. (*Id.* ¶ 14.) Greensill Bank "passported" its banking license to related entities in other jurisdictions in the European Economic Area (EEA). (*Id.*) This allowed Greensill Bank to perform certain activities authorized under its German banking license in other EEA member states without separate authorization from regulators in those other states. (*Id.*) As part of the factoring programs, Greensill Bank used its banking license to collect deposits from investors in the EEA Member States Austria, France, Hungary, Italy, Portugal and Romania. (*Id.*)

13.    Greensill Bank would take deposits and use the proceeds to purchase accounts receivable or IPUs, or notes representing the right to receive a share of certain accounts receivable, from Greensill Capital UK. (*Id* ¶ 11.) Interest payable on the deposits would be funded using the proceeds of the receivables and distributions from the notes. (*Id.*) Credit insurance against the risk of non-payment was purchased for the benefit of Greensill Bank. (*Id.*) The amount of Greensill Bank's uncollected receivables from its factoring business is an estimated EUR 3.85 billion. (*Id.*)

**B.    The German Proceeding**

14.    On March 15, 2021, BaFin filed an application with the German Court to open insolvency proceedings with respect to Greensill Bank.  (*Id.* ¶ 17.)

15.    On March 16, 2021, the German Court granted the application thereby commencing insolvency proceedings and issued an order appointing Dr. Michael C. Frege as the Insolvency Administrator (*lnsolvenzverwalter*) of Greensill Bank; the German Court also issued a Certificate setting forth the appointment of Dr. Frege as the Insolvency Administrator (together, the "March 16 Orders").  (*Id.* ¶ 18.)

16.    Pursuant to the March 16 Orders, a stay against execution against the Debtor's assets was imposed by section 89 of the German Insolvency Act, and Greensill Bank was prohibited from undertaking its normal business activities, including (i) disposing of its current and future assets for the duration of the insolvency proceedings or (ii) accepting any debt-discharging payments.  (*Id.* Ex. A.)

**C.    The Appointment of Dr. Frege as the Insolvency Administrator**

17.    Under Section 80 of the German Insolvency Act, as the duly appointed Insolvency Administrator of Greensill Bank, the Petitioner is vested with the power to administer the assets of the insolvency estate (*Insolvenzmasse*) of Greensill Bank and to dispose of any of the assets contained in the insolvency estate.  The Petitioner is the sole person entitled to act on behalf of Greensill Bank with respect to all matters regarding the insolvency estate.  In particular, the Petitioner, as Insolvency Administrator for Greensill Bank, is responsible for, among other things:

  a.   Identifying the assets of Greensill Bank globally, safeguarding these assets, managing and administering the insolvency estate, seeking and accepting payments due to Greensill Bank and disposing of Greensill Bank's assets pursuant to Section 80 of the German Insolvency Act;

    b.   Immediately assuming possession and management of the assets belonging to the insolvency estate pursuant to Section 148 of the German Insolvency Act;

    c.   Establishing a list of the individual assets belonging to the insolvency estate pursuant to Section 151 of the German Insolvency Act;

    d.   Setting up a list of all of Greensill Bank's creditors which shall be established on the basis of Greensill Bank's books and records or other information obtained from Greensill Bank or otherwise pursuant to Section 152 of the German Insolvency Act;

    e.   Assembling a balance sheet or a similar overview showing Greensill Bank's assets and liabilities pursuant to Section 153 of the German Insolvency Act; and

    f.   Disposing of Greensill Bank's assets in an effort to maximize value for distribution, exercising all rights to contest legal acts executed for the detriment of the insolvency estate and defending the insolvency estate against unjustified claims.

(*Id.* ¶ 19.)

## D.    German Insolvency Law and Procedures

18.    The purpose of the German Proceeding is: (a) to protect the interests of and treat equally all Greensill Bank's creditors globally; and (b) to prevent impairment of Greensill Bank's assets. (*Id.* ¶ 22.)

19.    The German Insolvency Act has provisions governing priority and equality of distribution that are similar to those of the Bankruptcy Code. (*Id.* ¶ 24.) The Insolvency Administrator liquidates the assets of the debtor and, once all the assets of the debtor are liquidated and claims against the debtor are determined, the proceeds of these assets are distributed to creditors according to a priority scheme. (*Id.*)

20.    The German Insolvency Act provides for equal treatment of all creditors with similarly situated claims and does not favor or provide special treatment for creditors based in Germany, the European Union, or the European Economic Area. (*Id.* ¶ 25.) The German Insolvency Act respects creditors' liens and security interests. (*Id.*) The German Insolvency Act

respects liens and security interests while treating creditors with similarly situated claims equally. (*Id.*)

E.      **The German Proceeding Claims Process**

21.      All creditors of Greensill Bank are entitled to file their claims in the German Proceeding in the same way and, as a general rule, with the same rights. (*Id.* ¶ 26.) On May 21, 2021, a schedule setting forth the claims filed up to that date, together with documents in support thereof, shall be made available at the German Court for inspection by all involved parties. (*Id.*) Under the German Insolvency Act, the German Court does not set a bar date for filing claims against the insolvency estate and claims may be filed up until the final distribution of Greensill Bank's assets to Greensill Bank's creditors. (*Id.*) Pursuant to Section 188 of the German Insolvency Act, prior to the distribution of any assets, the Insolvency Administrator will create a record of all claims to be considered in respect of any distribution. (*Id.*)

22.      The Insolvency Administrator is then responsible for informing the court of the total amount of the claims and the amount available for distribution from the insolvency estate, after which the German Court will publish the total amount of claims as well as the amount available for distribution. (*Id* ¶ 27.) If there is any dispute regarding the amount or validity of any claim, a declaratory judgment action must be filed with the appropriate civil court in Germany. (*Id.*)

23.      Pursuant to Section 188 and Section 9(1) of the German Insolvency Act, the German Court publishes the distribution list on the following website: www.insolvenzbekanntmachungen.de. (*Id* ¶ 28.) In accordance with Section 9(1) of the German Insolvency Act, publication of any document on this website is effective two days after the date of publication. (*Id.*)

24.     Pursuant to Section 189 of the German Insolvency Act, a creditor whose claim is not based on an executable deed or final judgement and whose claim has not been determined, must provide to the Insolvency Administrator sufficient evidence of their claim within two weeks from effective publication.  (*Id* ¶ 29.)   Failure to provide evidence of a claim within this time period will result in no distribution being made on that claim. (*Id.*)

**F.      Notice to Greensill Bank's Creditors**

25.     Notice of the opening of insolvency proceedings is given by a German insolvency court by publication on its webpage: https://www.insolvenzbekanntmachungen.de/.  (*Id.* ¶ 30.) Here, notice was given on March 16, 2021.  (*Id.*)   The Petitioner mailed letters to all known creditors of Greensill Bank pursuant to Section 8(3) of the German Insolvency on April 6, 2021. (*Id.* ¶ 31.)

26.      Pursuant to Section 156 of the German Insolvency Act, the German Court has scheduled a meeting for Tuesday, June 8, 2021 to assemble Greensill Bank's creditors in order to (i) establish a creditor's committee, (ii) examine claims by oral procedure, and (iii) discuss other matters in connection with the administration of the insolvency proceedings.  (*Id.* ¶ 32.)

<u>**RELIEF REQUESTED**</u>

27.     The Petitioner respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order,

a. recognizing the German Proceeding as a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code;

b. recognizing the Petitioner as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code;

c. granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information on the

assets and liabilities of the Debtor and (b) administer, realize, and distribute any and all of Greensill Bank's assets within the territorial jurisdiction of the US;

d.  staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or continuation of any action or proceeding concerning Greensill Bank's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520;

e.  suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber or otherwise dispose of any of Greensill Bank's assets to the extent any such right has not been suspended under sections 362 and 1520(a) of the Bankruptcy Code; and

f.  granting such other and further relief as the Court deems just and proper.

28.    In addition, the Petitioner may—to the extent necessary—return to this Court to seek enforcement of any orders entered by the German Court in connection with the German Proceeding or any other relief available to the Petitioner under chapter 15.

## BASIS FOR RELIEF

29.    Chapter 15 was designed to assist foreign representatives, such as the Petitioner, in the performance of duties in facilitating the restructuring of multinational enterprises and cross-border insolvency cases.  11 U.S.C. § 1501(b)(1).  The purpose of chapter 15 is to incorporate the Model Law on Cross-Border Insolvency (1997) in order to achieve: (i) cooperation between courts in the United States and foreign courts in cross-border insolvency cases, (ii) "greater legal certainty for trade and investment," (iii) fair and efficient administration of cross-border insolvencies that protects the interests of all creditors and interested parties, and (iv) "maximization of the value of the debtor's assets."  11 U.S.C. § 1501(a).  The Petitioner respectfully submits that each of these goals can best be achieved by recognition of the German Proceeding.  Here, each of the procedural requirements set forth in sections 1515 and 1517 have been satisfied.  In particular, the Petitioner is a foreign representative within the meaning of 11 U.S.C. § 1515(a) by virtue of his appointment as Insolvency Administrator by the German court; Germany is Greensill Bank's center of main

-11-

interests ("COMI") in satisfaction of 11 U.S.C. § 1517(b)(1); and thus, the German Proceeding is a foreign main proceeding within the meaning of 11 U.S.C. § 1517(b).

## A.    The German Proceeding is a "Foreign Main Proceeding"

30.    Section 1517(a) provides that, after a notice and hearing, an order recognizing a "foreign proceeding" as a "foreign main proceeding" shall be entered if (i) that proceeding falls within the definition of a "foreign main proceeding" pursuant to sections 1502(4) and 1517(b); (ii) "the foreign representative applying for recognition is a person or body;" and (iii) the chapter 15 petition satisfies the requirements set forth in section 1515. *See In re Oversight & Control Comm'n. of Avánzit, S.A.*, 385 B.R. 525, 534 (Bankr. S.D.N.Y. 2008).

31.    Under section 1502(4), a "foreign main proceeding" is a foreign proceeding that is "pending in the country where the debtor has the center of its main interests."   If this requirement is met, a court "shall recognize[]" that foreign proceeding as a "foreign main proceeding."  11 U.S.C. § 1517(b)(1).  If the Petitioner furnishes a certificate or copy of a court decision that "indicates that the foreign proceeding is a foreign proceeding and that the person or body is a foreign representative, the court is entitled to so presume."  11 U.S.C. § 1516.  Furthermore, "[i]n the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interest."  *Id.*  As discussed in greater detail below, and as evidenced by the materials accompanying this Verified Petition, the German Proceeding is a "foreign proceeding" pending in Bremen, Germany, where Greensill Bank has its COMI.  Thus, pursuant to section 1517(b)(1) of the Bankruptcy Code, the German Proceeding should be recognized as a "foreign main proceeding."

-12-

### 1.    The German Proceeding is a "Foreign Proceeding"

32.    A proceeding in a foreign country qualifies as a "foreign proceeding" if it is: (i) a collective judicial or administrative proceeding relating to insolvency or the adjustment of debts, (ii) pending in a foreign country, (iii) under the supervision of a foreign court, and (iv) for the purpose of reorganizing or liquidating a debtor's assets or affairs. *See id.*    Further, a "foreign court" is "a judicial or other authority competent to control or supervise a foreign proceeding."  11 U.S.C. § 101(23).

33.    Here, the German Proceeding meets all the criteria to be considered a "foreign proceeding."  As a threshold matter, the German Proceedings are pending before the Bremen Local Court in Germany.  (Schildt Decl. ¶ 17 Ex.A.)

34.    *Second*, owing to Greensill Bank's "imminent insolvency," (*see* Exhibit A to Schildt Declaration), the German Court has jurisdiction under the German Insolvency Act over all claims against Greensill Bank's assets, and by extension, the Petitioner is empowered to preserve, collect, and liquidate all Greensill Bank's assets wherever located.  (Schildt Decl. ¶ 21.)  As part of a judicial process overseen by the German Court, all creditors are to file their claims with the Petitioner as part of those proceedings to have their claims determined as part of that collective process.  (*Id* ¶ 26.)  Thus, the German Proceeding is a collective judicial administrative proceeding relating to insolvency.  11 U.S.C. § 101(23).

35.    *Third*, in connection with the German Proceedings, the German Court retains the authority to issue any necessary order to facilitate the administration of the German Proceedings, and thus Greensill Bank's assets are "subject to control or supervision by a foreign court."   11 U.S.C. § 101(23).

36.     *Fourth*, under the German Insolvency Act, the Petitioner is mandated—much like

a chapter 7 trustee under the Bankruptcy Code—to take possession and control of Greensill Bank's

property and assets, wherever situated, in order to maximize the value thereof, and distribute the

proceeds to stakeholders commensurate with the German statutory regime.  (*See* Schildt Decl. ¶

19.)

37.     Further, "the court is entitled to [] presume" that the German proceeding "is a

foreign proceeding" based on the certified copy of the March 16 Orders, which are attached to the

Schildt Declaration as **Exhibits A** and **B**.  *See* 11 U.S.C. § 1516(a).

38.     Bankruptcy courts in this District have recognized German insolvency proceedings

under the German Insolvency Act as "foreign proceedings" in other chapter 15 cases.  *See, e.g., In

re O.W. Bunker Germany GmbH*, No. 15-13018 (SMB) (Bankr. S.D.N.Y. January 13, 2016) [ECF

No. 25] (recognizing German insolvency proceeding as foreign main proceeding), *In re Qimonda

AG*, No. 09-14766 (RGM) (Bankr. E.D.Va. July 22, 2009) [ECF NO. 56] (same), *In re Lehman

Brothers Bankhaus AG*, No. 09-12704 (JMP) (Bankr. S.D.N.Y. May 22, 2009) [ECF No. 25]

(same), *In re Industrie Planung Fischer Aktiengesellschaft*, No. 07-30662 (WRS) (Bankr. M.D.

Al. June 19,2007) [ECF No. 7] (same); *In re Maple Bank GMBH*, No. 16-10336 (MG) (Bankr.

S.D.N.Y March 11, 2016) [ECF No. 19] (same).

39.     For these reasons, the Petitioner respectfully submits that the German Proceeding

is a "foreign proceeding" for purposes of recognition under chapter 15.

### 2.     *The Petitioner is a "Foreign Representative" Who Is a Person*

40.     Section 1517(a)(2) further requires that "the foreign representative applying for

recognition [be] a person or body."  *See* 11 U.S.C. § 1517(a)(2).  A "foreign representative" is "a

person or body, including a person or body appointed on an interim basis, authorized in a foreign

proceeding to administer the reorganization or the liquidation of the debtor's assets or affairs or to act as a representative of such foreign proceeding."[4]  11 U.S.C. § 101(24); s*ee also Ad Hoc Grp. Of Vitro Noteholders v. Vitro, S.A.B. de C.V. (In re Vitro, S.A.B. de C.V.)*, 470 B.R. 408, 412 (N.D. Tex. 2012) *aff'd sub nom.* 701 F.3d 1031 (5th Cir. 2012); *In re PT Bakrie Telecom Tbk*, 601 B.R. 707 (Bankr. S.D.N.Y. 2019) ("the requirement that a foreign representative be authorized in a foreign proceeding is not an onerous one.").

41.    Pursuant to the March 16 Orders, the Petitioner was appointed by the German Court to act as the Insolvency Administrator for Greensill Bank. (*See* Schildt Decl. ¶ 18.)  By virtue of this appointment, the Petitioner is the person charged with protecting the interests of Greensill Bank's creditors and other parties.  (Schildt Decl. ¶ 19.)  The Petitioner is responsible for, among other things, identifying and safeguarding Greensill Bank's current assets, administering claims against Greensill Bank, representing Greensill Bank in all legal transactions in connection with the German Proceeding, selling assets in private transactions and entering into new business transactions.  The March 16 Orders authorize and empower the Petitioner to act as Greensill Bank's Insolvency Administrator and, as a result, to commence this case under chapter 15.  (Schildt Dec. ¶ 18 Ex. A )  Accordingly, the Petitioner is a "foreign representative" under sections 101(24) and 1517(a)(2) of the Bankruptcy Code.

### 3.    *Greensill Bank's COMI Is in Germany*

42.    Although the Bankruptcy Code does not explicitly define what constitutes a debtor's COMI, "in the absence of evidence to the contrary, the debtor's registered office . . . is presumed to be the center of the debtor's main interests."  11 U.S.C. § 1516(c).  This presumption

---

[4] A "person" includes individuals, partnerships, and corporations.  11 U.S.C. § 101(41).

"permits and encourages fast action in cases where speed may be essential." *See In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.*, 374 B.R. 122, 128 (Bankr. S.D.N.Y. 2007) *aff'd*, 389 B.R. 325 (S.D.N.Y. 2008). Here, Greensill Bank's registered office is in Bremen, Germany, (Schildt Decl. 7.), and therefore, there is a presumption that Germany is where Greensill Bank has its COMI.

43.    Generally, "COMI lies where the debtor conducts its regular business, so that the place is ascertainable by third parties." *In re Fairfield Sentry Ltd.,* 714 F.3d at 130; *In re Servicos de Petroleo Constellation S.A.*, 613 B.R. 497 (Bankr. S.D.N.Y. 2020) (applying *Fairfield* factors to determination of COMI). In determining the place of a debtor's COMI, courts commonly consult a non-exhaustive list of factors, including: the location of the debtor's headquarters; the location of those who actually manage the debtor (such as the headquarters of a holding company); the location of the debtor's primary assets; the location of the majority of the debtor's creditors or of a majority of the creditors who would be affected by the case; and/or the jurisdiction whose law would apply to most disputes. *In re Fairfield Sentry Ltd.*, 714 F.3d 127, 137 (2d Cir. 2013); *see In re Bear Stearns High-Grade Structured Credit Strategies Master Fund, Ltd.,* 389 B.R. at 336. "In addition, the court may consider the location of the debtor's 'nerve center,' including from where the debtor's activities are directed and controlled, in determining a debtor's COMI." *In re Suntech Power Holdings Co., Ltd.*, 520 B.R. 399, 416 (Bankr. S.D.N.Y. 2014) (citation and quotations omitted). Courts may also consider "international sources of law . . . to underscore the importance of factors that indicate regularity and ascertainability." *Id.* (citation and quotations omitted). Finally, courts have found that COMI is determined as of the date that the chapter 15 petition is filed. *In re Fairfield Sentry Ltd.,* 714 F.3d 127, 133–37 (2d Cir. 2013).

-16-

44.     Here, Greensill Bank's COMI lies in Germany.  Indeed, Greensill Bank's "real seat" has always been Germany.  S*ee, e.g., In re Catalyst Paper Corp.*, No. 12-10221 (PJW) (Bankr. D. Del. Mar. 5, 2012) (Hr'g Tr. 28:14-20) [ECF No. 92] (Walsh, J.) (recognizing that when the "shots are called" from the foreign location, recognition is appropriate).  The following factors support a finding that Germany is Greensill Bank's COMI:

- Greensill Bank's office, which it owns, is located in Bremen, Germany;

- All strategic business decisions concerning Greensill Bank are made at, or otherwise issued from, the Office, including decisions related to financial and operational matters;

- Greensill Bank's directors are German citizens and residents and work from the Office;

- Greensill Bank's marketing materials, including its website, identify Greensill Bank as a German company;

- Greensill Bank held itself out to creditors and counterparties as a German commercial bank;

- Greensill Bank held board meetings in Germany;

- The Bremen office of Greensill Bank operated under the exclusive supervision of BaFin and Deutsche Bundesbank;

- Greensill Bank pays taxes to the German taxing authorities;

- Greensill Bank's books and records are held at its offices in Bremen, including all of the Greensill Bank's data and servers and the IT back up for such;

- Greensill Bank's depositors were located in Germany;

- Greensill Bank has bank accounts with major German banks in Germany, namely Bundesbank, DZ Bank and Sparkasse Bremen; and

- The Petitioner is located in Frankfurt am Main, Germany, so all decisions related to the German Proceeding and these chapter 15 cases are made in Germany.

(Schildt Decl. ¶ 34.)

45.     In the March 16 Orders, the German Court recognized that Greensill Bank's COMI is in Bremen, Germany in finding that the German Proceeding was commenced in accordance with

section 3 of the German Insolvency Act, which provides that the insolvency court in whose district

the debtor has COMI has exclusive jurisdiction over the matter.  (Schildt Decl. ¶ 41.)

46.    For these reasons, the Court should find that Greensill Bank's COMI is Germany.

Based on the foregoing reasons, it was readily "ascertainable by third parties," or creditors that the

Debtor would avail themselves of, or otherwise be subject to, German law in the event of

insolvency.  *See In re Fairfield Sentry*, 714 F.3d at 130 (2d Cir. 2013).  Because the German

Proceeding is pending in Germany, where Greensill Bank has its center of main interests, it should

be recognized as a foreign main proceeding pursuant to sections 1502(4) and 1517(b)(1).

### 4.    *The Verified Petition Was Properly Filed and Satisfies the Requirements of Section 1515 of the Bankruptcy Code*

47.    The final prerequisite to recognition under section 1517(a) is that the petition must

satisfy the procedural requirements of section 1515: (i) the foreign representative must file a

petition for recognition; (ii) the petition for recognition must be accompanied by either (a) "a

certified copy of the decision commencing [the] foreign proceeding and appointing the foreign

representative," (b) "a certificate from the foreign court affirming the existence of [the] foreign

proceeding and of the appointment of the foreign representative," or (c) if such evidence is

unavailable, "any other evidence acceptable to the Court" demonstrating the existence of the

foreign proceeding and "appointment of the foreign representative"; and (iii) a statement must be

filed "identifying all foreign proceedings with respect to the debtor that are known to the foreign

representative." *See* 11 U.S.C. § 1515(c).[5]

---

[5] Section 1515(d) requires that documents submitted in connection with the requirements under section 1515(b) be translated into English. Here, all documents submitted in support of the Verified Petition have been translated into English; thus, the Petitioner submits that section 1515(d) is satisfied.

48.    Here, these cases have been commenced by the Petitioner—a foreign representative—by the filing of this Verified Petition.  *See* 11 U.S.C. § 1515(a).  The Verified Petition is accompanied by certified copies of the March 16 Orders, which demonstrate the commencement of the German Proceeding and further authorize the Petitioner to act as Greensill Bank's Insolvency Administrator.  (*See* Schildt Decl. ¶ 18 Ex. A; 11 U.S.C. § 1515(b)(1).) Further, the Petitioner submits that the March 16 Orders constitute "a certificate from the foreign court affirming the existence of [the German Proceeding] and of the appointment of the [Petitioner]."  11 U.S.C. § 1515(b)(2).  Finally, the Verified Petition is accompanied by the *Statement of Petitioner Pursuant to 11 U.S.C. § 1515(c) Identifying Foreign Proceedings* filed concurrently herewith, which identifies all foreign proceedings with respect to the Debtor that are known to the Petitioner.  *See* 11 U.S.C. § 1515(c).

49.    Accordingly, because each of the prerequisites to recognition under section 1517 has been met, the Petitioner respectfully requests that the Court recognize (i) the German Proceeding as a foreign main proceeding and (ii) the Petitioner as Greensill Bank's foreign representative.

**B.    Public Policy and Further Relief**

*1.    Recognition of the German Proceeding is Not Contrary to Public Policy*

50.    Pursuant to section 1506 of the Bankruptcy Code, "[n]othing in [chapter 15] prevents the court from refusing to take an action governed by this chapter if the action would be manifestly contrary to the public policy of the United States."  Here, recognition of the German Proceeding as a foreign main proceeding is not contrary to public policy.  As set forth above, chapter 15 was enacted to, among other things, promote (i) cooperation between courts in the United States and foreign courts in cross-border insolvency cases, (ii) the protection of all

interested parties in a cross-border insolvency, and (iii) the "maximization of the value of the debtor's assets." *See* 11 U.S.C. § 1501(a). The German Proceeding was commenced—and the Petitioner subsequently filed this Verified Petition—in order to prevent creditors from pursuing piecemeal remedies, preserve and maximize the value of Greensill Bank's assets, and ensure that any such assets are monetized and equitably distributed. (*See* Schildt Decl. ¶ 24.)

51.    Further, the Debtor has counterparties and assets in the United States, that— pursuant to the March 16 Orders—are subject to the administration of the German Proceeding. The Petitioner's administration of any U.S. assets will benefit from the assistance of this Court. As such, recognition of the German Proceeding under chapter 15 is necessary to maximize the value of Greensill Bank's assets in German Proceeding. Thus, the Petitioner's objectives are not contrary to—and indeed advance—fundamental principles of United States bankruptcy law and public policy.

### 2.    *The Petitioner is Entitled to Relief Under Section 1520*

52.    Upon recognition of the German Proceeding as a foreign main proceeding, section 1520 makes certain relief available to the Petitioner in respect of Greensill Bank's property within the territorial jurisdiction of the United States. Such relief is granted automatically as a consequence of recognition, and section 1520 requires no further showing by the Petitioner to obtain such relief. *See In re Catalyst Paper Corporation*, 2017 WL 5479405 (Bankr. D. Del. Jan. 20, 2017) (recognizing relief pursuant to section 1520).

### 3.    *Additional Relief Under Section 1521 is Necessary and Appropriate*

53.    "[W]here necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors, the court may, at the request of the foreign representative, grant any appropriate relief. . . ." 11 U.S.C. § 1521(a). Such relief may include

"entrusting the administration or realization of all or part of the debtor's assets within the territorial jurisdiction of the United States to the foreign representative," "providing for the examination of witnesses, the taking of evidence or the delivery of information concerning the debtor's assets, affairs, rights, obligations or liabilities," and, except for certain avoidance provisions, "any additional relief that may be available to a trustee. . . ."  11 U.S.C. § 1521(a)(4), (5), and (7).

54.    The Petitioner's goal is to preserve and maximize the value of Greensill Bank's assets for the benefit of its creditors.  (*See* Schildt Decl. ¶¶ 25.)   Accordingly, the Petitioner respectfully requests that he be: (i) entrusted with the realization, administration, and distribution of Greensill Bank's assets within the territorial jurisdiction of the United States pursuant to section 1521(a)(5) of the Bankruptcy Code, and (ii) empowered to examine witnesses and take evidence or delivery of information concerning Greensill Bank's assets, affairs, rights, obligations or liabilities pursuant to section 1521(a)(4) of the Bankruptcy Code.

55.    In addition, pursuant to section 1520(a)(1)-(3), the Petitioner seeks: (i) the stay of any execution against, or the commencement, or continuation of any action or proceeding concerning, Greensill Bank's assets, rights, obligations or liabilities, and (ii) the suspension of the right to transfer, encumber or otherwise dispose of any of Greensill Bank's assets, to the extent any such actions have not been stayed or suspended under sections 362 and 1520(a) of the Bankruptcy Code.  This relief is needed for the Petitioner to complete Greensill Bank's insolvency administration and ensure that all distributable assets have been identified and collected. Moreover, section 1521 relief is essential to the Petitioner's ability to maximize the value of Greensill Bank's assets.  Such relief will preserve the value of Greensill Bank's U.S. assets and further protect claimholders against the pursuit of piecemeal remedies.

56.     Additionally, pursuant to section 1521(b) of the Bankruptcy Code, the court may, upon recognition and "at the request of the foreign representative, entrust the distribution of all or part of the debtor's assets located in the United States to the foreign representative . . . provided that the court is satisfied that the interests of creditors in the US are sufficiently protected."  11 U.S.C. § 1521(b).  Here, the Petitioner is actively investigating Greensill Bank's U.S. assets and operations to ensure that all interested parties are being treated in accordance with applicable law, and the Petitioner is obligated by the German Court and under the German Insolvency Act to maximize value of the Debtor's assets and ensure proper distribution as prescribed by the priority scheme under German law, which is similar to that under chapter 7.  (*See* Schildt Decl. ¶ 24.)  As a result, the Petitioner respectfully submits that pursuant to section 1521(b), the Court should authorize and direct the turnover of assets for distribution through the German Proceeding.  *See, e.g., In re O.W. Bunker Germany GmbH*, No. 15-13018 (SMB) (Bankr. S.D.N.Y. January 13, 2016) [ECF No. 25] (recognizing German insolvency proceeding as foreign main proceeding), *In re Qimonda AG*, No. 09-14766 (RGM) (Bankr. E.D.Va. July 22, 2009) [ECF No. 56] (same), *In re Lehman Brothers Bankhaus AG*, No. 09-12704 (JMP) (Bankr. S.D.N.Y. May 22, 2009) [ECF No. 25] (same), *In re Industrie Planung Fischer Aktiengesellschaft*, No. 07-30662 (WRS) (Bankr. M.D. Al. June 19, 2007) [ECF No. 7] (same).

57.     Further, the requested relief is appropriate because the Petitioner has been granted the authority sought in connection with the German Proceeding under German law.  (*See* Schildt Decl. ¶ 6.)

## **RESERVATION**

58.     The Petitioner was recently appointed Insolvency Administrator for the Debtor and has begun to diligently investigate their operations and finances—including any potential claims or competing interests in Greensill Bank's assets.   However, given the early stage of the investigation and the German Proceeding, the Petitioner does not have a complete understanding of Greensill Bank's finances and operations and therefore, no statement or omission in this Verified Petition or any related filings—including the Schildt Declaration—should be construed as: (i) an admission with respect to the nature, extent, scope, or validity of any potential claim against the Debtor or their assets, or (ii) a full and complete statement of the facts and circumstances relevant to these chapter 15 cases.  Further, the Petitioner hereby reserves any and all rights he may have to amend, modify, or file supplemental papers in connection with this Verified Petition and the requested relief to the extent that the Petitioner deems appropriate during the course of the investigation.

## **NOTICE**

59.     Notice of this Verified Petition has been provided in accordance with the terms set forth in the Petitioner's *Ex Parte Motion for an Order (I) Scheduling Hearing Regarding Verified Chapter 15 Petition, and (II) Specifying Form And Manner of Service of Notice* filed concurrently herewith.  The Petitioner submits that such notice is proper and that no other or further notice need be provided.

## **NO PRIOR REQUEST**

60.     No prior motion or application for the relief requested herein has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, the Petitioner respectfully requests that this Court enter an order, substantially in the form of the attached Proposed Order: (i) recognizing the German Proceeding as (a) a "foreign main proceeding" under sections 1502(4), 1515, and 1517 of the Bankruptcy Code; (ii) recognizing the Petitioner as the "foreign representative" of the Debtor as defined in section 101(24) of the Bankruptcy Code; (iii) granting the Petitioner authority—pursuant to section 1521(a) of the Bankruptcy Code—to (a) examine witnesses, take evidence, and deliver information concerning Greensill Bank's assets, affairs, rights, obligations, and liabilities and (b) administer, realize, and distribute any and all of Greensill Bank's assets within the territorial jurisdiction of the United States; (iv) staying—pursuant to section 1521(a) of the Bankruptcy Code—the execution, commencement, or continuation of any action or proceeding concerning Greensill Bank's assets, rights, obligations or liabilities to the extent they have not been stayed under section 1520; (v) suspending—pursuant to section 1521(a) of the Bankruptcy Code—the right to transfer, encumber or otherwise dispose of any of Greensill Bank's assets to the extent any such right has not been suspended under sections 362 and 1520(a) of the Bankruptcy Code; and (vi) granting such other and further relief as the Court deems just and proper.

[*signature on following page*]

-24-

Dated: April 20, 2021
New York, New York

Respectfully submitted,

**KOBRE & KIM LLP**

/**s**/ D. Farrington Yates
D. Farrington Yates
Victor S. Leung
800 Third Avenue
New York, New York 10022
Tel: (212) 488-1200
Email: Farrington.Yates@kobrekim.com
Victor.Leung@kobrekim.com

*Counsel for the Petitioner*